UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| KIMBERLY SHOWALTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 22-005-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Kimberly Showalter has filed a motion for summary judgment, contending that the Social Security Administration ("SSA") erred in concluding that she was not disabled. [Record No. 11] She further asserts that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence because he did not properly evaluate the evidence, discuss the combined effect of her impairments, resolve conflicts in contradictory evidence, or consider her subjective complaints of pain. The Acting Commissioner of the Social Security Administration filed a cross-motion for summary judgment, arguing that the ALJ's decision is supported by substantial evidence. [Record No. 13]

Having considered the record, the Court determines that the ALJ's decision is supported by substantial evidence. The Court will grant the Acting Commissioner's motion and deny the relief sought by Showalter.

**I.**

Showalter filed protective applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income in July and August 2019. [Administrative Transcript

"Tr." 270-305] Showalter previously applied for benefits on April 12, 2012, but that application was denied. [Tr. 16] The SSA denied her current applications initially and upon reconsideration. [Tr. 117, 119, 139, 141] Showalter then submitted a written request for a hearing before an ALJ, which was granted. [Tr. 228-30] A telephonic administrative hearing was conducted on October 29, 2020. [Tr. 15] Thereafter, the ALJ issued a written opinion concluding that Showalter was not disabled within the meaning of the Social Security Act ("ACT"). [Tr. 31] Showalter then filed a request for review from the Appeals Council, which was denied. [Tr. 1] Showalter exhausted her administrative remedies, and this matter is ripe for review. *See* 42 U.S.C. § 405(g).

## II.

Showalter is a 44-year-old former tax preparer and sales representative. [Tr. 69] She has a high school education and has attended some college. [Tr. 44] She asserts that she stopped working due to chronic pain and migraine headaches. [Tr. 48] While there is some indication that Showalter has suffered due to impairments for many years, most treatment records included in the file concern the period 2018 to 2021. [Tr. 352]

Showalter received treatment at Commonwealth Pain Associates from September 2018 to April 2019 for neck pain, back pain, and fibromyalgia. [Tr. 446] Showalter rated her pain as a nine out of ten during an appointment on April 23, 2019. [Tr. 446] During physical examination, Showalter exhibited tenderness and limited range of motion in her cervical spine. [Tr. 450] She also had tenderness in her lumbar facet joints, paraspinal region, and the iliolumbar region. [Tr. 450] However, her cervical and lumbar spine had normal alignment. [Tr. 450] Additionally, an MRI indicated that Showalter had degenerative changes and canal stenosis in her cervical spine at C5-C6 and in her lumbar spine at L3-L4 and L5-S1. [Tr. 450]

Showalter sought care at Taylorsville Community Health from March 2018 to December 2019 for chronic pain, fibromyalgia, and low potassium levels.  [Tr. 508-550, 807-826]  Sharon Jamison, APRN, noted during a physical examination conducted on August 6, 2019, that Showalter had an abnormal gait, tenderness in her cervical and lumbar spine, and pain and swelling in her left ankle.  [Tr. 513]  Jamison's notes state that Showalter had "multiple tender points on light palpation of all 18 tenderpoints designated in dx for fibromyalgia" and indicated that Showalter was "having a flare."  [Tr. 513]  Jamison gave Showalter non-steroidal anti-inflammatory injections to control pain.  [Tr. 515, 696, 782]  Showalter also received steroid injections on March 27, 2018, and December 27, 2018.  [Tr. 532, 691]

On September 27, 2019, Showalter returned for a follow-up appointment with Jamison regarding her chronic pain.  Showalter also complained that she was suffering from persistent migraine headaches.   [Tr. 645] Additionally, she visited with Jamison at Park Duvalle Community Health Center on January 14, 2020, and January 21, 2020, for migraine headaches. Showalter was treated by Jamison on April 27, 2020, for neck pain radiating down her shoulder and left arm.  [Tr. 1046-48, 1051]

Showalter was treated at Norton Healthcare from March 2018 to August 2019.  [Tr. 551-576]  She was seen on August 12, 2019, for chest pain with Dale Senior, M.D., indicated that Showalter presented with "symptoms suspicious for angina pectoris." [Tr. 555]  However, an EKG exhibited "normal sinus rhythm with RSR prime and left axis deviation."  [Tr. 558]

Showalter also was treated at Lee Family Chiropractic for complaints of back and neck pain in 2019 and 2020.  [Tr. 1253]    She was diagnosed with segmental and somatic dysfunction of the lumbar, sacral, cervical and thoracic regions.  [Tr. 1255-56, 1258]  The

- 3 -

claimant was treated using electrical stimulation, hot/cold therapy, manual therapy, and an activator technique. [Tr. 1256] Throughout treatment, Showalter appeared to demonstrate improvement and progressed as anticipated. [Tr. 1258] During a December 16, 2019, appointment, her gait and ambulation appeared normal. [Tr. 1265] And although Showalter's cervical range of motion was within normal limits, her lumbar range of motion was limited. [Tr. 1266]

A MRI of Showalter's spike was performed on August 20, 2019. [Tr. 870] The results were mostly normal and unremarkable, but mild narrowing was observed at C4-5 level and a small disc osteophyte complex was seen at C-5-6. [Tr. 870] William Chaung, M.D., concluded that there was some degenerative change causing neuroforaminal narrowing, but there was no significant central canal stenosis at any level. [Tr. 870]

Showalter visited an emergency room at JHL Jewish Hospital four times during 2019. The first visit on January 28, 2019, involved claims relating to pelvic pain. [Tr. 906] An ultrasound revealed a cyst on one of the claimant's ovaries. The pain she was experiencing was attributed to either the cyst or endometriosis. [Tr. 910] Showalter returned on June 13, 2019, complaining of nausea, vomiting, and diarrhea. [Tr. 881] A CT performed during this visit indicated no acute abnormalities but revealed an inflammation of the right lower lobe and a moderately enlarged liver. [Tr. 885] Next, Showalter was admitted to the emergency room on October 20, 2019, presenting with abdominal pain, made worse with palpation and vomiting. [Tr. 706, 844] During this visit, a CT scan indicated that Showalter had severe fatty liver disease with no acute changes. [Tr. 723] However, an EGD showed "mild non-erosive gastritis." [Tr. 751] Finally, Showalter returned on December 13, 2019, for pain following a fall. However, examination did not reveal any fractures. Further, her SI joints were normal,

her hips and pelvis intact, and no pelvic soft tissue abnormality or significant degenerative changes were observed. [Tr. 797-98]

Showalter was admitted to the emergency room at JHL Jewish Hospital on January 13, 2020, for a severe headache. [Tr. 1160] Originally, she complained of chest pain, but quickly changed her chief complaint to suffering from a headache. [Tr. 1160] Showalter's condition improved, and she was discharged with instructions to follow-up with her primary care physician. [Tr. 1064] Showalter also visited the emergency room on June 26, 2020, for abdominal trauma after falling into her car door. [Tr. 1180]

Showalter received mental health treatment at Centerstone (later Seven Counties Services, Inc.) in Shelbyville, Kentucky from March 2018 to March 2020. [Tr. 581-640, 956-1016] There, she was diagnosed with posttraumatic stress disorder, depression, histrionic personality disorder, and substance abuse disorder. [Tr. 588, 954-56] During an appointment on October 22, 2018, Showalter's providers indicated that she was doing well on her current medications. [Tr. 588] During appointments on May 30, 2018, October 22, 2018, January 14, 2019, and February 5, 2020, treatment notes indicated that Showalter was clinically stable. [Tr. 591] Showalter noted that she had been having difficulty because she was terminated from her job and having some memory problems at an appointment on April 9, 2019. Treatment notes indicated that Showalter was moderately symptomatic. [Tr. 598]

Between April 9, 2019, and August 27, 2019, Showalter repeatedly missed therapy appointments and was non-compliant with her medication regimen. During a follow-up appointment on August 27, 2019, Showalter indicated that she wished to again receive medication for mental health concerns. Treatment notes indicated that she was prescribed further medication for these concerns and counseled about medication compliance.

Showalter completed a psychiatric evaluation on September 30, 2019, at Centerstone. [Tr. 941] The claimant indicated that she had commenced drinking again due to a troubled relationship and that she was struggling with depression. [Tr. 941] Upon examination, Showalter appeared anxious, depressed, and sad. [Tr. 943] However, she did not exhibit any memory problems and had no concentration or attention deficits. [Tr. 944] Showalter was discharged from care at Centerstone on March 13, 2020, after she failed to return for recommended services and struggled to attend her appointments. [Tr. 1018]

Candace Ferguson, APRN, FNP, conducted a consultative examination with Showalter on November 18, 2019. [Tr. 759] At that time, Showalter alleged that she suffered from depression, anxiety, fibromyalgia, degenerative disc disease of her neck and lower back, spinal arthritis, sleep apnea, and migraines. [Tr. 759] Showalter further reported that she suffered from migraine headaches "about 15 days each month which can last 2 to 3 days at a time" and at least 20 emergency room visits in the previous year related to her migraines.[1] [Tr. 759]

Upon physical examination, Ferguson noted that Showalter could "flex, rotate, and tilt the cervical spine to full range of motion," but that the claimant exhibited "limited range of motion with neck extension to 30 degrees." [Tr. 760] Additionally, Showalter's joints had full range of motion without evidence of any change such as heat, redness, or deformity. [Tr. 760] Range of motion in the claimant's lumbosacral spine was limited with flexion to 80 degrees, but lateral flexion and extension of her lumbar spine were normal. [Tr. 760] Further, Showalter's straight leg raise was negative both sitting and supine. [Tr. 760] Showalter's gait

---

[1] The administrative record only includes four emergency room visits in 2019, and none were for migraines headaches.

appeared normal, she could complete a full squat without difficulty, and her motor strength was 5/5 in all muscle groups. [Tr. 760-61]

Ferguson's diagnostic impression was that Showalter did not generally have restrictions with lifting, except that heavy lifting may exacerbate her chronic pain. [Tr. 761] Additionally, Ferguson concluded that Showalter appeared capable of standing, walking, or sitting without restriction. [Tr. 761] She explained that Showalter did not have any impairments affecting her vision or hearing, and Showalter was able to communicate effectively throughout the exam. [Tr. 761]

In her disability report, Showalter listed that she suffered from depression, anxiety, fibromyalgia, degenerative disc disease in her neck and lower back, spinal arthritis, sleep apnea, and migraines. [Tr. 338] And in her pain and daily activities questionnaire, Showalter asserted that her pain began eight years ago but it had gotten worse in the last few years, and the pain is "everywhere" due to the fibromyalgia. [Tr. 352] She explained the pain worsened when she tried to walk, do chores, work, and earn a living. [Tr. 353] Showalter also stated that she could no longer exercise, walk, bend, stoop, or sit for too long due to the pain she experienced. [Tr. 354] She noted that she previously performed most household chores but now she only shares in the responsibility and can help if she takes breaks. [Tr. 355, 357] Showalter stated that she did not need help with personal needs and grooming. [Tr. 358] She also alleged that memory issues and extreme fatigue interfered with her daily life. [Tr. 359-60] Showalter noted in her function report, that anxiety and depression prevented her from doing most things because she gets overwhelmed. [Tr. 371]

Showalter's former boyfriend, John Mathus, submitted a third-party function report that echoed Showalter's claims. He explained that Showalter becomes overwhelmed due to

anxiety, depression, and pain from fibromyalgia.  [Tr. 362]  He also noted that she suffered from migraine headaches that require emergency treatment.  [Tr. 362-63]

Douglas Back, M.D., initially reviewed Showalter's file on December 1, 2019.  [Tr. 112]  He concluded that Showalter has the residual functional capacity to perform a range of light work and that she could frequently climb, balance, stoop, kneel, crouch, or crawl.  [Tr. 112]  Robert Culbertson, M.D., reviewed the file at the reconsideration level and concluded that new evidence in the record did not change the initial assessment.  [Tr. 158]

Shambra Mulder, Ph.D., reviewed Showalter's mental health records.  [Tr. 114]  She concluded that Showalter has adaption limitations, but does not have social interaction limitations, understanding and memory limitations, or sustained concentration and persistence limitations.  [Tr. 113] Laura Cutler, Ph.D., reviewed the file upon reconsideration and concluded that Showalter has sustained concentration and persistence limitations.  [Tr. 158]  She found that Showalter is moderately limited in her ability to maintain attention and concentration for extended periods and in her ability to carry out detailed instructions.  [Tr. 158-59]

As noted above, ALJ Jerry Lovitt conducted a telephonic administrative hearing on October 29, 2020.  [Tr. 38]  Showalter testified during this hearing.  She explained that she cannot stand or sit for long periods without experiencing pain.  [Tr. 53]   Additionally, Showalter testified that she cannot work full time because any effort to work a 40-hour week requires bed rest for days due to over-exertion.  [Tr. 55]  The claimant also noted that she suffers from flare-ups from the fibromyalgia that last for periods of three to four days.  [Tr. 59]  Showalter testified that she suffers from three to five migraine headaches each month and

that she had been hospitalized for migraines "several times." [Tr. 60] Further, she stated that her depression is eight on a ten-point scale. [Tr. 63]

A vocational expert also testified during the administrative hearing. [Tr. 67] The vocational expert explained that there is work in the national economy that someone with Showalter's hypothetical limitations could perform, including office helpers, mailroom clerks, and labelers. [Tr. 71]

After considering the foregoing evidence and testimony, the ALJ concluded that Showalter was not disabled under the relevant provisions of the Act. [Tr. 18] However, ALJ Lovitt concluded that Showalter did suffered from the following severe impairments: degenerative disc disease, fibromyalgia, obesity, fatty liver disease, migraines, anxiety, and depression. [Tr. 18] Notwithstanding this determination, the ALJ found that Showalter did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 19]

ALJ Lovitt also concluded that Showalter had the Residual Functional Capacity ("RFC") to perform "light work" subject to the following limitations:

> she can frequently climb ramps and stairs. She can frequently balance, stoop, kneel, crawl, and crouch. She should never climb ladders, ropes, or scaffolds, nor have exposure to unprotected heights. The claimant can tolerate no more than frequent exposure to temperature extremes, pulmonary irritants or poor ventilation conditions, vibrations, or workplace hazards such as machinery with moving parts that fail to stop when human contact is lost. She can tolerate no more than moderate levels of noise, as defined in Appendix D of the Selected Characteristics of Occupations. She can perform no more than occasional bilateral overhead reaching, but can frequently reach at or below the shoulder level height bilaterally. She can also perform frequent bilateral handling and fine fingering. The claimant requires an occupation with an established routine, set procedures in place, and with few changes throughout the workday. She can perform no manufacturing sector fast-paced production line or production-

paced assembly line work.  The claimant can tolerate frequent contact with coworkers and supervisors, but only occasional contact with the general public, and with being off task not to exceed 10% of the workday in addition to normally scheduled breaks, and missing no more than one day of work per month.

[Tr. 22]

The ALJ explained that Showalter was unable to perform any past relevant work but, when considering her age, education, work experience, and RFC, there are jobs that existed in significant numbers that Showalter could perform.  [Tr. 30]  As a result, ALJ Lovitt concluded that Showalter was not disabled within the meaning of the Act.

### III.

A "disability" is defined under the Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b); 416.920(b).  Second, the claimant must show that she suffers from a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(c); 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at

- 10 -

least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d); 416.920(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work.  20 C.F.R. §§ 404.1520(e); 416.920(e).  If she can, she is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g); 416.920(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Thus, this Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

- 11 -

**IV.**

Showalter asserts that the ALJ's decision is not supported by substantial evidence because the ALJ did not: (i) properly evaluate the evidence, (ii) consider the combined effect of her impairments, (iii) resolve conflicts in contradictory evidence or provide a narrative discussion about the inconsistencies, or (iv) properly consider Showalter's complaints of pain.

Substantial evidence is "more than a mere scintilla but less than a preponderance; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). If the ALJ's decision is supported by substantial evidence, the decision must be affirmed, even if the reviewing court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

**i.**

Showalter argues the ALJ's decision is not supported by substantial evidence because he failed to properly evaluate the evidence. But contrary to this contention, the ALJ explicitly reviewed the objective medical evidence, reports from the state agency consultants, the consultative exam, the third-party report of Showalter's boyfriend, and Showalter's own statements about her impairments. ALJ Lovitt then evaluated the persuasiveness of each opinion in the record and provided reasons for his conclusions.

The ALJ discussed the objective medical evidence and considered how Showalter's medical history warranted certain restrictions, including avoiding heavy lifting, constant reaching, and several postural activities. [Tr. 23-24] ALJ Lovitt detailed Showalter's MRI

results that demonstrated degenerative changes in the claimant's lumbar and cervical spine; physical evaluations that demonstrated she had "exquisite tenderness" and limited range of motion; and reviewed the results of the consultative exam conducted by Candace Ferguson, APRN.  [Tr. 24]  The ALJ also discussed Showalter's treatment for fatty liver disease in determining that she should avoid heavier lifting.  [Tr. 25]

ALJ Lovitt's analysis is consistent with the medical evidence.  While Showalter's MRIs and physical evaluations exhibit some degenerative changes, tenderness in the joints, and limited range of motion, her treatment records also indicated that her spine had normal alignment and her gait and ambulation were normal.  [Tr. 450, 1265] Additionally, the claimant's MRI performed on August 20, 2019, was mostly normal and unremarkable, and there was only some mild narrowing and some degenerative change.  [Tr. 870]

The ALJ also reviewed Showalter's limited medical history regarding migraine headaches.  While Showalter asserted that she had migraine symptoms 15 days per month, there were very few references to migraine treatment in Showalter's medical records.  [Tr. 25] The ALJ did include a limitation for Showalter to avoid environmental hazards that may exacerbate migraine headaches, but concluded that Showalter's limited medical history regarding migraines did not justify additional limitations.  Upon review, it appears that Showalter only complained of migraine headaches at three primary care appointments and during one emergency room visit.

The ALJ also considered Showalter's mental health treatment records in developing her RFC.  [Tr. 25] As he explained, Showalter has a history of anxiety and depression, but has responded well to treatment.  [Tr. 25]  However, treatment records indicated periods of noncompliance with both therapy and her medications.  [Tr. 25]  ALJ Lovitt concluded that

- 13 -

Showalter's mental health treatment notes indicated that her "primary mental limitations lie in her ability to effectively adapt to change and interact appropriately with others." As a result, he included limitations in the RFC determination to accommodate these issues. [Tr. 25-26]

After detailing the objective medical evidence, ALJ Lovitt discussed the persuasiveness of the medical opinions, the prior administrative findings in the record, the consultative exam, and Showalter's former boyfriend's third-party function report. Specifically, he found that the state agency medical and psychological consultants' conclusions that Showalter could perform light work were generally persuasive. The ALJ then concluded that the consultative exam conducted by Ferguson was unpersuasive because it was inconsistent with the medical evidence. ALJ Lovitt opined that Showalter needed additional limitations beyond those recommended by Ferguson. Additionally, and as discussed later, the ALJ also properly considered Showalter's impairments in combination and properly considered her subjective complaints of pain when evaluating the evidence in the record.

In summary, ALJ Lovitt properly evaluated the evidence in the record and his decision is supported by substantial evidence.

### ii.

But Showalter also contends that the ALJ erred because he did not consider her impairments in combination. The Code of Federal Regulations requires that an ALJ consider all of a claimant's impairments, even those that are not severe in developing a claimant's RFC. *See* 20 C.F.R § 416.945(e); SSR 96-8p, 1996 SSR LEXIS 5. An ALJ's "analysis of a claimant's combined impairments is sufficient where the judge referred to a 'combination of impairments' in deciding the claimant did not meet the listings and all of the claimant's

impairments were discussed individually in the decision." *Austin v. Comm'r of Soc. Sec.*, 914 F. App'x 569 (6th Cir. 2018).

In *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 591 (6th Cir. 1987), the claimant argued that the district court and the ALJ erred because the ALJ did not consider impairments in combination. However, the Sixth Circuit concluded that "the decision itself suggest[ed] that the ALJ did consider the combination of impairments, as he was required to do." *Id*. The court explained that, even though the ALJ considered each element of the record individually, this does not suggest that "the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to 'a combination of impairments' in deciding that [the claimant] did not meet the 'listings.'" *Id*. at 592. Further, the court explained that the use of the plural "impairments" and statements that the ALJ considered the entire record were indicative that the ALJ considered the impairments in combination. *Id*.; *see also Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020) (explaining that "the ALJ's statements that she had considered the entire record and all of [the claimant's] symptoms suggest that she had considered [the claimant's] impairments in combination.").

Here, the ALJ repeatedly stated throughout his opinion that he considered Showalter's impairments in combination, even though he discussed Showalter's impairments separately in his analysis. First, he explained that he considered all of Showalter's impairments, including her non-severe impairments in determining her functional limitations. [Tr. 19] Next, ALJ Lovitt explicitly considered Showalter's impairments "singly and in combination" when determining that she did not meet any of the Listings. [Tr. 20] The ALJ also clearly stated that Showalter's RFC "allowed for off task behavior and one absence per month due to her

- 15 -

headaches and *all of her impairments acting in combination*." [Tr. 28 (emphasis added).] The ALJ also considered Showalter's "impairments" and the entire record in developing her RFC, which provides additional support for the conclusion that the ALJ considered Showalter's impairments in combination. *Emard,* 953 F.3d at 851.

The ALJ's opinion clearly demonstrates that he considered the combined effect of Showalter's impairments.

**iii.**

Showalter also complains that the ALJ failed to resolve conflicts in contradictory evidence or provide a narrative discussion about the alleged inconsistencies. Specifically, she contends that her statements in the disability report contradict the ALJ's conclusion regarding her functional limitations and that the ALJ failed to explain the contradiction. But the ALJ's opinion explicitly discussed and resolved inconsistencies between Showalter's statements and the evidence in the record. And Showalter "cannot establish a lack of substantial evidence by merely pointing to evidence of record that supports [her] position and contradicts the ALJ's findings." *Doyle v. Astrue*, No. 10-47-GFVT, 2011 U.S. Dist. LEXIS 33257, at *13 (E.D. Ky. Jan. 7, 2011), adopted by *Doyle v. Astrue*, 2011 U.S. Dist. LEXIS 33228 (E.D. Ky., Mar. 29, 2011).

ALJ Lovitt first provided a framework for considering the consistency of Showalter's statements in addition to the objective medical evidence. Specifically, he noted that sometimes a claimant's symptoms "suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone" and discussed the factors used to assess the consistency of Showalter's statements with the objective medical evidence. [Tr. 23]

ALJ Lovitt explicitly compared Showalter's statements that "she suffers from medical conditions that cause her to experience pain, fatigue, stiffness, anxiety, weakness, headaches, and difficulty lifting, squatting, bending, standing, walking, kneeling, climbing stairs, remembering, concentrating, completing tasks, and getting along with others" to her statements that she could manage her personal care, prepare meals, perform household chores, drive, go shopping, engage in hobbies, and spend time with others. [Tr. 23-24] In addition to comparing her statements, the ALJ concluded that the objective medical evidence did not "provide strong support for the claimant's allegations of totally disabling symptoms and limitations." [Tr. 24] Showalter contends that the ALJ should have asked her questions during the telephonic hearing about the alleged inconsistencies, but the ALJ was not required to ask her specific questions and his conclusions are supported by the objective medical evidence and the conclusions of the state agency consultants.

ALJ Lovitt provided a thorough analysis of the medical evidence in comparison to Showalter's statements about the severity of her impairments. He properly discounted her statements based on the objective medical evidence in the record and explained how her statements were inconsistent with the medical evidence.

The ALJ did not err in his analysis of the inconsistencies in Showalter's statements.

### iv.

Similar to her argument contending that the ALJ failed to properly resolve inconsistencies, Showalter weaves in arguments that the ALJ failed to consider her subjective complaints of pain. Regarding this claim, the Court notes that an ALJ must apply a two-step process for evaluating an individual's subjective complaints of pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 5180304 (Oct. 25, 2017); *Walters v. Commissioner of Soc. Sec.,*

127 F.3d 525, 531 (6th Cir. 1997).  First, the ALJ must conclude that there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b).  The ALJ must then consider whether the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms find support in the record.  20 C.F.R. § 404.1529(c).

ALJ Lovitt properly analyzed Showalter's complaints of pain under this framework. He concluded that Showalter's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  [Tr. 26]  But he found that Showalter's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record.  [Tr. 26]  ALJ Lovitt compared Showalter's statements about her limitations in standing, walking, kneeling, remembering, concentrating, completing tasks, and getting along with others with her statements that she was "capable of managing her personal care and hygiene, preparing meals, performing typical household chores, driving, going shopping, engaging in hobbies, and spending time with others."  [Tr. 23]

The ALJ explained that the medical findings did not support a greater limitation beyond what was outlined in the RFC determination.  In considering Showalter's fibromyalgia and joint pain, ALJ Lovitt concluded that "treatment records indicate the claimant has a history of chronic pain and limited range of motion throughout the cervical spine and lumbar spine, and examinations routinely indicated tenderness throughout, despite good strength and normal neurologic function," and noted that an MRI showed degenerative changes.  He stated that Showalter had been managing her pain with long term opiate therapy and injections.  [Tr. 24] The ALJ also explained that, while treatment notes indicated that Showalter had tenderness

- 18 -

and range of motion limitations, physical examinations did not reveal "significant restrictions in mobility, gait, or strength."  [Tr. 24]  Additionally, the ALJ explained that there were limited treatment records regarding Showalter's migraines, which she said she suffered "15 days per month, lasting two to three days at a time."

In considering Showalter's mental health ailments, the ALJ noted that Showalter did well on medications, but that there was periodic noncompliance.  [Tr. 25]  He also reviewed treatment notes that indicated that Showalter "reported elevated anxiety symptoms and exhibited a depressed and anxious mood, but the claimant had linear thought content, good speech and fair judgment and insight.  The claimant also had normal sensorium and cognition, with unimpaired memory and attention."  [Tr. 25]

The ALJ properly utilized the two-step framework in analyzing Showalter's subjective complaints of pain and she has not identified any basis upon which to alter his decision.

**v.**

In summary, the ALJ applied the proper standards in concluding that Showalter was not disabled.  His decision is supported by substantial evidence.  Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Kimberly Showalter's Motion for Summary Judgment [Record No. 11] is **DENIED**.

2. Defendant Acting Commissioner of the Social Security Administration Kilolo Kijakazi's Motion for Summary Judgment [Record No. 13] is **GRANTED**.

Dated:  June 17, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky